UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20295-CR-BECERRA/TORRES

UNITED STATES OF AMERICA,

vs.

BRAYAN TOCHON-LOPEZ, et al,

                    Defendants.

_____/

## UNITED STATES' RESPONSE IN OPPOSITION TO
## DEFENDANTS' JOINT MOTION TO DISMISS INDICTMENT

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and files its Response in Opposition to Defendants' Joint Motion to Dismiss Indictment [DE 71].   The defendants' arguments are all foreclosed by binding precedent upholding the Maritime Drug Law Enforcement Act ("MDLEA") prosecutions in exactly this factual scenario, including (1) cases where the vessel is interdicted outside a foreign nation's territorial waters, as any area outside of twelve nautical miles is deemed to be international waters and upon the high seas;[1]  and (2) the United States has jurisdiction despite there being no nexus between the defendants, the offense, and the United States. The defendants' reliance on out-of-circuit law and attempt to distinguish controlling Eleventh Circuit precedent is flawed.

---

[1] The defendants first two grounds challenging the Indictment, i.e. allegation that a foreign nation's "contiguous zone" is not the 'high seas' and allegation that the MDLEA's definition of stateless vessel is void for vagueness as applied to conduct occurring in another nation's contiguous zone are being addressed together.

## I.   __STATEMENT OF THE FACTS__

On or about June 26, 2024, a maritime patrol aircraft detected a Go-Fast Vessel (GFV) approximately 20 nautical miles east of Tucacas, Venezuela.   The GFV had eight (8) individuals on board, four (4) outboard engines, bales on deck, and displayed no indicia of nationality.

HNLMS GRONINGEN, which was in the area with a Law Enforcement Detachment Team ("LEDET") on board, was diverted to interdict and investigate.   United States Coast Guard District 7 (D7) assumed tactical control over the HNLMS GRONINGEN and granted a Statement of No Objection for a Right of Visit boarding to stop a non-compliant vessel, including authorization to employ both warning shots and disabling fire, on a profile GFV reasonably suspected of drug smuggling.

The HNLMS GRONINGEN, with its LEDET embarked, launching two (2) small boats (FRISCS) and a Helicopter Interdiction Tactical Squadron. The Helicopter Interdiction Tactical Squadron employed warning shots, which were ineffective followed by disabling fire, which was effective.   During the pursuit, the crew on the FRISCS witnessed the crew of the GFV jettisoning bales some which were later recovered. When the FRISCS arrived on scene, it gained positive control of the GFV.

During the Right of Visit questioning, Brayan TOCHON-LOPEZ identified himself as the master but did not make a claim of nationality for the vessel.   Consequently, the vessel was treated as a vessel without nationality and, therefore, subject to the jurisdiction of the United States. A full law enforcement boarding followed.

On board the GFV were Brayan Tochon-Lopez, Wilmer Moises Barselo, Jose Feliciano Lemos, Jesus Rodriguez, Luis Andres Zuniaga, Jorge Luis Lopez-Astudillo, Eulides Oliveros-

2

Lugo, and Stiven Jose Flores.   All eight (8) individuals on board the GFV claimed Venezuelan nationality for themselves.

The boarding team recovered a total of eight (8) bales.   USCG conducted two (2) field tests on the contents of the bales which field tested positive for cocaine. The approximate at sea weight of the cocaine was 228 kilograms.

## II.   SUMMARY OF THE ARGUMENT

This Court has jurisdiction as, despite arguments to the contrary, the Eleventh Circuit has ruled that any area outside a foreign nations' twelve nautical miles is international water and upon the high seas; and therefore, within Congress' Felonies Committed on the High Seas Clause authority.   Moreover, there is no requirement that there be a nexus between the defendants, the offense, and the United States.

## III.   LEGAL ARGUMENT

### A.   Any Area Outside a Foreign Nation's Twelve Nautical Miles, i.e. "Territorial Waters," Is Deemed International Waters and High Seas

The Felonies Clause of the U.S. Constitution empowers Congress to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations[.]" U.S. CONST. ART. 1, § 8,  CL. 10.  Congress enacted the MDLEA pursuant to the Felonies Clause.  *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016) (explaining that MDLEA "was enacted under Congress's authority provided by the Felonies Clause . . . to define and punish felonies committed on the high seas."); *see also United States v. Estupinan*, 453 F.3d 1336, 1338–89 (11th Cir. 2006) ("[W]e reject [the] contention that the MDLEA is unconstitutional . . . .").  The Felonies Clause "is textually limited to conduct on the high seas . . . ."  *United States v. Bellaizac-Hurtado,* 700 F.3d 1245, 1248 (11th Cir. 2012).

3

There is no dispute that the defendants' vessel was interdicted approximately seventeen nautical miles from Venezuela [DE 71 at 2].   However, the defendants instead argue that seventeen nautical miles is within Venezuela's contiguous zone and thus, not consider the high seas.   *Id.* at 7.   Despite their assertions to the contrary, any area outside of a foreign nation's twelve nautical miles, i.e. "territorial waters," is deemed international waters and high seas, and therefore, within Congress's Felonies Committed on the High Seas Clause powers.   *See United States v. Alfonso*, 104 F.4th 815 (11th Cir. 2024).   *See also, United States v. Canario-Vilomar*, No. 22-CR-20019, 2022 WL 1450032 (S.D. Fla. May 9, 2022).

In support of their argument, the defendants make several attempts to distinguish their arguments from the clear holding in *Alfonso*.   They assert that in *Alfonso*, the Eleventh Circuit did not address contiguous zone, whether Congress can define and punish conduct which occurs in the EEZ, and the evolution of the term territorial seas.

### Congress's Criminal Proscriptive Authority Extends to All of the High Seas, Defined in Case Law and Regulations to Include All Waters Seaward of Any Nation's Territorial Waters.

The only relevant geographic question for purposes of Congress's proscriptive criminal authority under the Felonies on the High Seas Clause is whether the defendants' vessel traveled on the high seas. Case law and federal regulations are clear that so long as their vessel was not in territorial waters, United States Coast Guard law enforcement authority and MDLEA jurisdiction applies. The defendants cannot be correct that Congress's Constitutional authority excludes foreign nations' twenty-four nautical miles contiguous zone, because no such category existed at the time of the Felonies on the High Seas Clause's drafting. There were only territorial waters and international waters. The Eleventh Circuit has affirmed MDLEA jurisdiction so long as the

4

defendants' vessel was outside territorial waters, as was the case here, recognizing that any vessel beyond the 12-mile territorial limit is "in international waters or at 'high seas.'"   *See United States v. McPhee*, 336 F.3d 1269, 1272-1273, 1276 (11th Cir. 2003); *see also Alfonso, supra*.

A foreign nation exercises a measure of sovereign rights, but is not sovereign, within its Exclusive Economic Zone ("EEZ"), two hundred nautical mile. "The EEZ is a maritime area in which the coastal state may exercise certain limited powers as recognized under international law. The EEZ is not the same as the concept of the territorial sea, and is beyond the territorial jurisdiction of any coastal state." United States: Proclamation on an Exclusive Economic Zone, 22 I.L.M. 461, 462 (March 10, 1983). "The interests of a coastal state in its EEZ largely have to do with development of natural resources and the availability of scientific research. A coastal state has limited powers in the EEZ under customary international law." *Mayaguezanos por la Salud y el Ambiente v. United States*, 198 F.3d 297, 305 (1st Cir. 1999). "The EEZ bordering a particular nation's territorial sea is merely a part of the high seas where that nation has special economic rights and jurisdiction." *United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015). Because the defendants' charged offenses clearly fall outside Venezuela's twelve nautical miles, the offense is deemed to have occurred in international waters and upon the high seas irrespective if that area is also considered Venezuela's contiguous or Exclusive Economic Zone.

A vessel outside of the recognized 12-mile limit of a nation's territorial seas is a "vessel located within international waters" and subject to MDLEA jurisdiction. *McPhee*, 336 F.3d at 1273; *see also Dilbert v. United States*, 2013 WL 5408444 (M. D. Fla. Sept. 25, 2013) (unreported) (following *McPhee* and explaining that the petitioner's contrary argument "misinterprets

UNCLOS, which defines the EEZ as "an area beyond and adjacent to the territorial sea").2 *See also Beyle*, 782 F.3d at 167 (rejecting defense arguments that because the vessel was in an EEZ "he was not on the 'high seas' for the purposes of U.S. law"). The Eleventh Circuit held in *McPhee* that because the vessel there was outside the "twelve-mile Bahamian territorial boundary" of "Bahamian territorial waters," "the *Notty* was in international waters or at 'high seas' at that time." *McPhee*, 336 F.3d at 1276 (affirming MDLEA prosecution). The Eleventh Circuit similarly recognized, in *United States v. Rioseco*, 845 F.2d 299 (11th Cir. 1988) (affirming Lacey Act conviction), that a vessel stopped by the Coast Guard "within the Bahamas' exclusive economic zone" was in "an area of the high seas." *Id.* at 300. These binding authorities establish that any vessel outside the 12-mile territorial limit, even within an EEZ, is located on the high seas and within United States criminal jurisdiction.

In *McPhee*, the Eleventh Circuit cited 33 C.F.R. § 2.05–1's definition of the "high seas" as "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country." *McPhee*, 336 F.3d at 1273. The regulations have since been amended and the operative provision is now 33 C.F.R. § 2.32(c). That regulation defines "high seas" "[f]or the purposes of 14 U.S.C. 522"—the statute authorizing the Coast Guard's law enforcement power over "violations of laws of the United States"3—to "include[] the *exclusive economic zones* of the United States and other nations, *as well as those waters that are seaward of territorial seas* of the United States and other nations." 33 C.F.R. 2.32(c) (emphasis added).

Defendants' reference to 33 C.F.R. § 2.32(d) overlooks the specific provision within § 2.32

---

2 United Nations Convention on the Law of the Sea (UNCLOS), art. 55, Dec. 10 1982, 1883 U.N.T.S. 397.
3 14 U.S.C. § 522(a).

addressing the definition of "high seas" for criminal jurisdiction purposes. EEZs, by their own name, address economic resources, not the geographic boundaries of a nation's proscriptive criminal jurisdiction. *See Beyle*, 782 F.3d at 167. The defendants' reliance on § 2.32(d) is, therefore, misplaced. Section 2.32(c) is the regulation that specifically applies to the Coast Guard's criminal jurisdiction to enforce violations of U.S. law.

The First Circuit cited this amended definition of "high seas" in 33 C.F.R. § 2.32(c), in an MDLEA case, where it noted that the location in question was "outside Dominican territorial waters and considered the 'high seas' for purposes of the Coast Guard's enforcement jurisdiction, … although within the Dominican Republic's exclusive economic zone." *United States v. Matos-Luchi*, 627 F.3d 1, 2 (1st Cir. 2010).

More recently, the First Circuit sitting *en banc* upheld Congress's authority to define and punish felonies on the high seas, in an MDLEA prosecution regarding a vessel located in "an area approximately 160 nautical miles south of Puerto Rico constituting international waters," even though it was "within the Exclusive Economic Zone ('EEZ') of the United States." *United States v. Aybar-Ulloa*, 987 F.3d 1, 3 (1st Cir.) (*en banc*) (affirming MDLEA prosecutions), *cert. denied*, 2021 WL 2194943, 141 S. Ct. 2714 (2021). That circuit's entire *en banc* proceeding to consider the scope of Congress's extra-territorial authority under article I, § 8, cl. 10, would have been unnecessary if the United States' own EEZ granted it proscriptive criminal jurisdiction as if it were its own territorial waters. Instead, the case was repeatedly recognized throughout the *en banc* opinion to involve a vessel in "international waters" or the "high seas." *See generally Aybar-Ulloa*, 987 F.3d at 1.

Neither the text of the Felonies on the High Seas Clause nor the history of Contiguous or

EEZs supports the defendants' argument that United States criminal jurisdiction does not extend to that portion of the high seas.   In declaring the United States' EEZ, President Reagan recognized that "all nations will continue to enjoy non-resource related freedoms of the high seas beyond the U.S. territorial sea and within the U.S. EEZ" including "the freedom of navigation and overflight and other internationally lawful uses of the sea." Proclamation On An Exclusive Economic Zone, 22 I.L.M. at 462. It is precisely this freedom of navigation on the high seas that stateless vessels do not enjoy, subjecting them to United States jurisdiction even under international law. *Campbell*, 743 F.3d at 810 ("Stateless vessels … are international pariahs that have no internationally recognized right to navigate freely on the high seas." (internal quotation omitted)).

The United States, by Presidential proclamation, thus recognized EEZs only as areas where "the coastal state may exercise certain limited powers" while still being "beyond the territorial jurisdiction of any coastal state." United States: Proclamation on an Exclusive Economic Zone, 22 I.L.M. at 462. The Executive Branch, by federal regulation, further defines the "high seas," for criminal jurisdiction purposes, to "include[] the exclusive economic zones of the United States and other nations, as well as those waters that are seaward of territorial seas of the United States and other nations." 33 C.F.R. 2.32(c) (emphasis added). In this area, "[t]he text and structure of the Constitution grant the President the power to recognize foreign nations and governments," and this "exclusive recognition power encompasses the authority to acknowledge, in a formal sense, the legitimacy of other states and governments, including their territorial bounds." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 14, 17 (2015).

Defendants' argument requires assuming that, in granting Congress the power "[t]o define and punish … Felonies committed on the high Seas," the Framers intended *sub silentio* to constrain

Presidential power to determine where international boundaries lie. It also requires concluding that when the United States recognized other nations' EEZ rights up to 200 miles, *see* 33 C.F.R. § 2.30(b), it chose to exclude virtually the entire Caribbean Sea from the Coast Guard's law enforcement authority, contradicting that very authority granted in the adjacent provision which "include[d] the exclusive economic zones of the United States and other nations, as well as those waters that are seaward of territorial seas," *see* 33 C.F.R. § 2.32(c).



[https://atlas-caraibe.certic.unicaen.fr/en/page-26.html (reflecting the scope of Caribbean EEZs)]

Ultimately, *McPhee* remains controlling law in this circuit. It does not matter that the Eleventh Circuit addressed the boundaries of the high seas for the purposes of determining which statutory jurisdictional provision of the MDLEA applied instead of whether the Felonies on the High Seas Clause provision applied. The Eleventh Circuit held that a vessel outside the 12-mile limit of a nation's territorial waters "was in international waters or at 'high seas.'" *Id.* Federal regulations issued under the President's authority to recognize international boundaries likewise define the high seas for the purposes of the Coast Guard's law enforcement authority. 33 C.F.R. § 2.32(c). It cannot be so for these criminal jurisdiction purposes but not so for Congress's

Constitutional criminal proscriptive authority.

Because it is well-settled that the United States may exercise criminal jurisdiction over a vessel without nationality operating outside the territorial seas but within the contiguous or EEZ of a foreign nation, the defendants' claim must fail.

**B. There is no nexus requirement for MDLEA prosecution of Drug Trafficking Offenses and the exercise of jurisdiction over the defendants does not violate Due Process.**

The defendants next argue that the United States cannot exercise jurisdiction because there is no nexus between the United States and the defendants or the charged offenses and that this prosecution violates Due Process.  This argument also has been rejected by the Eleventh Circuit. While acknowledging that the Eleventh Circuit has reviewed Due Process challenges "in other contexts," the defendants seek to distinguish those precedents by arguing that the fact that the interdiction occurred in the contiguous zone of Venezuela renders invalid the exercise of jurisdiction in this case.  The defendants argue that because there is no nexus between the defendants' conduct and the United States, the court should apply a minimum contacts due process analysis to find that the exercise of jurisdiction by the United States in this case is "unreasonable and inconsistent with Due Process."

As the defendants concede, the Eleventh Circuit has repeatedly rejected challenges to the MDLEA's constitutionality as applied to vessels without nationality on the high seas.  *See, e.g.*, *United States v. Campbell*, 734 F.3d 802, 806 (11th Cir. 2014); *United States v. Cruickshank*, 837 F.3d 1182, 1190 (11th Cir. 2016); *United States v. Estupinan*, 453 F.3d 1336, 1338 n.2 (11th Cir. 2006); *United States v. De La Garza*, 516 F.3d 1266, 1272 (11th Cir. 2008); *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003); *United States v. Marino-Garcia*, 679 F.2d 1373,

1383 (11th Cir. 1982).   As the court wrote in *Valois*:

> [I]n *United States v. Rendon*, we held that the Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of aliens captured on the high seas while drug trafficking because the MDLEA provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas.

*United States v. Valois*, 915 F.3d 717, 722 (11ᵗʰ Cir. 2019) (*citing United States v. Rendon,* 354 F.3d 1320, 1326 (11ᵗʰ Cir. 2003).   "The defendants' MDLEA convictions do not violate their due process rights even if the offenses lack a nexus to the United States."   *Id.*

For Congress to criminalize conduct occurring outside the United States, it "must state that it intends the law to have extraterritorial effect," and "application of the law must comport with due process." *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378 (11th Cir. 2011).   By its plain terms, the MDLEA applies to drug trafficking on vessels outside the United States. *See* 46 U.S.C. § 70503(b) (providing that the MDLEA's prohibitions "appl[y] even though the act is committed outside the territorial jurisdiction of the United States").   The Eleventh Circuit has repeatedly recognized that due process limitations do not bar MDLEA prosecutions of aliens transporting drugs on the high seas on stateless vessels.   "[D]ue process requires only that an exercise of extraterritorial jurisdiction not be arbitrary or fundamentally unfair."   *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016). The MDLEA, United States treaty obligations, and international law provide both notice and support for the United States' prosecution of aliens trafficking drugs on the high seas, especially when done on stateless vessels which claim the protection of no other nation.

The Felonies Clause "empowers Congress '[t]o define and punish Piracies and Felonies on the high Seas.'" *United States v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006) (quoting U.S.

Const., art. I, § 8, cl. 10).   In acknowledging Congress's authority, "this circuit and other circuits have not embellished the MDLEA with the requirement of a nexus between a defendant's criminal conduct and the United States." *Id.* (internal quotation omitted); *see also United States v. Wilchcombe*, 838 F.3d 1179, 1186 (11th Cir. 2016) (holding that "[t]he Constitution and principles of international law support" the rejection of the defendant's due process challenge to the MDLEA's prohibitions on drug trafficking "committed outside the territorial jurisdiction of the United States," even where the conduct lacks a United States nexus).   "[T]he Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking, because the [MDLEA] provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *United States v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014) (*citing United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003)).

The MDLEA is also part of the United States' comprehensive, multilateral effort to combat the international drug trade, pursuant to "a treaty that obliges it to 'co-operate to the fullest extent possible to suppress illicit traffic by sea, in conformity with the international law of the sea.'" *Castillo*, 899 F.3d 1208, 1213 (quoting the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, art. 17(1), Dec. 20, 1988, 1582 U.N.T.S. 95 ("UN Convention Against Illicit Traffic")). A treaty to which the United States is a signatory "provides global notice to the world" that the proscribed acts may be subject to prosecution by any signatory party. *See United States v. Noel*, 893 F.3d 1294, 1303-04 (11th Cir. 2018).

Stateless vessels are "are international pariahs that have no internationally recognized right to navigate freely on the high seas, [and] the law places no restrictions upon a nation's right to subject stateless vessels to its jurisdiction." *Ibarguen-Mosquera*, 634 F.3d at 1379 (internal

12

quotation omitted). Even if a person trafficking drugs on board a vessel subject to the jurisdiction of another nation did "have a legitimate expectation that because he has subjected himself to the laws of one nation, other nations will not be entitled to exercise jurisdiction without some nexus[, ... the] same is not true when a defendant attempts to avoid the law of all nations by travelling on a stateless vessel." *United States v. Van Der End*, ___ F.3d ___, 2019 WL 5991546, at (2d Cir. Nov. 14, 2019) (cleaned up).

The defendants ask this Court to adopt for the first time the Ninth Circuit's nexus requirement, which that court described as "analogous to 'minimum contacts' in personal jurisdiction analysis." *United States v. Zakharov*, 468 F.3d 1171, 1177 (9th Cir. 2006). But even the Ninth Circuit does not require a United States nexus in order to prosecute defendants, like himself, accused of trafficking drugs on a stateless vessel.   *United States v. Perlaza*, 439 F.3d 1149, 1161 (9th Cir. 2006).

No binding precedent in this Circuit requires there to be a nexus, or analogous minimum contacts, between a vessel subject to the jurisdiction of the United States under the MDLEA, or its crew, in order for an MDLEA prosecution to proceed.   *See United States v. Estrada-Obregon*, 270 F. App'x 978, 980 n.1 (11th Cir. 2008) (unpublished) (rejecting the minimum contacts argument under plain error review, but noting the circuit split over the requirement of "a nexus between conduct on foreign-registered vessels and the United States analogous to the minimum contacts required for personal jurisdiction").

The Fifth Circuit rejected the Ninth Circuit's minimum contacts analysis, reasoning that "to the extent the Due Process Clause may constrain the MDLEA's extraterritorial reach, that clause does not impose a nexus requirement, in that Congress has acted pursuant to the Piracies and

Felonies Clause ... the only specific grant of power to be found in the Constitution for the punishment of offenses outside the territorial limits of the United States." *United States v. Suerte*, 291 F.3d 366, 370, 375 (5th Cir. 2002). This Court has recognized other bases for Congress's authority to criminalize extra-territorial conduct, even when lacking a United States nexus, such as under the Foreign Commerce Clause.[4] *See Baston*, 818 F.3d at 666-69. The Fifth Circuit also noted that "the MDLEA's application to [an alien with the consent of the vessel's flag nation] still passes constitutional muster because, on these facts, international law does not require a nexus." *Suerte*, 291 F.3d at 375. Although a defendant's Fifth Amendment due process claim is "a question of domestic law," "[c]ompliance with international law satisfies due process because it puts a defendant on notice that he could be subjected to the jurisdiction of the United States." *Baston*, 818 F.3d at 669.

Although the defendants analogize the exercise of jurisdiction in this case to civil jurisdiction concepts, under civil law doctrine, "[t]he heart of [the] protection is fair warning," which the courts have applied by ensuring that "the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being hauled into court there." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (internal quotations omitted). In the criminal context, however, "[f]air warning does not require that the defendants understand that they could be subject to criminal prosecution in the United States so long as they would reasonably understand that their conduct was criminal and would subject them to prosecution somewhere." *Van Der End*, ___ F.3d ___, 2019 WL 5991546, at *5 (affirming MDLEA jurisdiction even absent a U.S. nexus) (internal quotation omitted); *see also United States*

---

[4] U.S. Const., art. I, § 8, cl. 3.

*v. Murillo*, 826 F.3d 152, 157 (4th Cir. 2016).

Even the Ninth Circuit's "sufficient nexus" requirement, however, can be satisfied with a showing that "the plan for shipping the drugs was likely to have effects in the United States." *Zakharov*, 468 F.3d at 1177-78. According to the Drug Enforcement Administration's 2020 National Drug Threat Assessment,[5] "[a]lmost all of the world's cocaine" is sourced from South America, primarily from Bolivia, Colombia, and Peru. *Id.* at 32. In addition to the large volume of drug trafficking into the United States along the Southwest Border, "[t]raffickers, including Dominican TCOs,[6] also transport cocaine through the Caribbean Corridor, primarily via maritime and aerial smuggling methods." *Id.* at 33. Along with Mexican and Colombian trafficking organizations, Dominican trafficking organizations are a major source of Colombian cocaine trafficked into the United States. *Id.* Moreover, "[t]he greatest amount of cocaine seized reported by the DEA occurred in states along the [Southwest Border] and Caribbean Corridor, or those with high-traffic international airports or seaports . . . . Florida was the U.S. state or territory with the ]largest amount of cocaine seizures by weight in 2019. Florida's proximity to the Caribbean Corridor facilitates a large volume of cocaine smuggling." *Id.* at 34. "Puerto Rico was the U.S. state or territory with the fourth largest amount of cocaine seizures. These seizures indicate that traffickers continue to use Puerto Rico as a major transit location in the Caribbean for cocaine destined for the continental United States." *Id.* at 34-35. Finally, "[r]oughly eight percent of documented cocaine movements departing South America moved toward the Caribbean Islands in 2019, *mostly aboard go-fast vessels* (See Figure 26). . . ." *Id.* at 35 (emphasis added).

---

5 https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf

6 Transnational Criminal Organizations.

The MDLEA, the UN Convention Against Illicit Traffic, and the United States' associated bilateral enforcement agreements with various coastal nations along the Eastern Pacific and the Caribbean Sea, recognize that "trafficking in controlled substances aboard vessels is a serious international problem ... present[ing] a specific threat to the security and societal wellbeing of the United States" and that such "illicit traffic and other related organized criminal activities ... undermine the legitimate economies and threaten the stability, security and sovereignty of States." *See* 46 U.S.C. § 70501(1); UN Convention Against Illicit Traffic at 1 (preamble). Congress's findings and the United States' treaty obligations would satisfy the Ninth Circuit's nexus requirement, even if this Court were to adopt it for the first time in this case.

**IV.**    **CONCLUSION**

Based on the foregoing, the United States respectfully requests that the defendants' motion to dismiss be denied.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

*/s/ Yvonne Rodriguez-Schack*
YVONNE RODRIGUEZ-SCHACK
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 794686
99 N.E. 4th Street
7th Floor
Miami, Florida 33132
305.961.9014
Yvonne.Rodriguez-Schack@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically

filed on the 26th of February, 2025, with the Clerk of the Court using CM/ECF.   I further certify

that the foregoing document is being served this day on counsel of record via CM/ECF.


*/s/ Yvonne Rodriguez-Schack*
YVONNE RODRIGUEZ-SCHACK
Assistant United States Attorney