UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-20295-CR-BECERRA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**BRAYAN TOCHON-LOPEZ**,
WILMER MOISES BARSELO,
JOSE FELICIANO LEMOS,
JESUS RODRIGUEZ,
LUIS ANDRES ZUNIAGA,
JORGE LUIS LOPEZ-ASTUDILLO,
EULIDES OLIVEROS-LUGO, and
STIVEN JOSE FLORES,

    Defendants.
_____/

### REPLY TO THE GOVERNMENT'S RESPONSE OPPOSING THE DEFENDANTS' JOINT MOTION TO DISMISS INDICTMENT

Mr. Tochon-Lopez, joined by all seven co-defendants, filed a motion to dismiss in which he raised three claims. DE 71. As he advised in the motion, the third claim—that there is no jurisdiction in this case because neither the offense alleged nor the people involved bore any connection to the United States—is maintained for purposes of further review by the Eleventh Circuit. This claim is thus not further discussed herein. Regarding the first two claims—that there is no jurisdiction in the contiguous zone of another country because (i) that application would exceed Congress's Felonies Clause power, and (ii) the MDLEA is void for vagueness as applied to the contiguous zone—he submits the below in reply to the Government's response, filed at DE 77.

1

*First*, as an initial matter, it seems there is no dispute as to the facts relevant to the claims raised in the motion to dismiss:[1] the vessel here was stopped 17 nautical miles from Venezuela and had been driving along that country's coast, including in its territorial waters, prior to interdiction. *See* DE 77, at 2-3 and 4; DE 71, at 2-5.

*Second*, it is worth noting at the outset that **<u>no case</u>** cited in the Government's response addresses the contiguous zone at all, even in dicta. Moreover, to the extent undersigned could determine the locations of the vessels in each of the Government's cited cases, with one exception (discussed below), none even involved a vessel that was factually within the contiguous zone of another nation.

*Third*, the one exception—meaning, the one case cited by the Government where the vessel was factually less than 24 nm from the coast of another country—is *United States v. McPhee*, 336 F.3d 1269, 1274 (11th Cir. 2003) (17 nm). The Government relies most heavily on this case, but the case is inapposite to the claims in this motion. The only issues in dispute in *McPhee* were factual ones: (i) whether the Government had proved that the relevant vessel was more than 12 nm from a certain part of the Bahamian coastline, and (ii) whether another part of the Bahamas located even closer to the vessel did or did not constitute Bahamian coastline for

---

[1] To the extent the Government's response states that Mr. Tochon identified himself as the master of the vessel, this appears to be contradicted by the record. *See* DE 77, at 2. The report from the Coast Guard officer who spoke to the defendants in Spanish makes clear: "None of the POB [persons on board] on board the TOI [target of interest] claimed to be the captain or person in charge of the TOI and no claim of nationality was made for the TOI. One individual by the name of Brayan Tochon was answering the questions so he was identified as the person in charge of the TOI." *See* Exh. 1 (translator's report). But this fact does not bear on the claims raised in this motion.

2

purposes of determining the extent of territorial waters. *Id*. To emphasize, the second question (more relevant here) was whether, factually speaking, a certain vessel *was in territorial waters*, not whether the vessel was in the high seas; more specifically, whether Saint Vincent Rock was an island of the Bahamas such that if someone was 12 nm from Saint Vincent Rock, they would be in territorial waters. *Id*. And the Eleventh Circuit ruled that the district court had not clearly erred in finding that Saint Vincent Rock was not an "island," but just a "rock." *Id*. at 1275-78. So vessels 12 nautical miles from Saint Vincent Rock were not in territorial waters. *Id*.

It bears emphasis that the *McPhee* Court was simply not asked to consider what waters constituted the "high seas," because the parties did not contest the legal boundary of the high seas. *See id*. And certainly, *McPhee* did not address or even acknowledge the existence of the contiguous zone, let alone whether the waters of the contiguous zone are excluded from the "high seas"—this legal issue was never raised so the Court had no occasion to consider it. *See id*. Additionally, even insofar as the Court's opinion quoted, by way of background, a single C.F.R. regulation that defined the "high seas" as "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country," that regulation—33 C.F.R. § 2.05-1, has in fact since been repealed. *See id*. at 1273. All other authorities in the background section of *McPhee* related to what *territorial waters* are, not what the high seas are. And indeed, the Eleventh Circuit's recent opinion in *United States of Alfonso* makes clear that when actually in dispute, the question of what the "high seas" are for Felonies Clause purposes cannot be reduced to the simple reading of a

3

C.F.R. regulation. *See* 104 F.4th 815, 821 (11th Cir. 2024) ("The scope of Congress's authority under the Felonies Clause (*i.e.*, whether Congress can define and punish conduct that occurs in an EEZ) is informed by the meaning of "high seas" when the Framers ratified and adopted the Constitution.").

*Fourth*, turning to Founding Era history, as *Alfonso* directs us to do, the Government's response asserts, without citation: "The defendants cannot be correct that Congress's Constitutional authority excludes foreign nations' twenty-four nautical miles contiguous zone, because no such category existed at the time of the Felonies on the High Seas Clause's drafting." DE 77, at 4. But nowhere in its response does the Government acknowledge, let alone refute, Mr. Tochon's many citations for the contrary position that **the contiguous zone *did exist* at the Founding**. *See* DE 71, at 9-12.

The core of Mr. Tochon's primary jurisdictional argument is that at the Founding, there was an approximate three-nautical-mile territorial sea (which was later extended to the twelve-nautical-mile zone we currently recognize in MDLEA law), and *there was also a twelve-nautical-mile contiguous zone*, known then as customs waters (which was later extended to a twenty-four-nautical-mile zone that we should also just as well recognize in MDLEA law for the same reasons). *Id.* The evolution of the former, the territorial sea, is documented in *Alfonso*. *See* 104 F.4th at 821-23. As to the latter, Mr. Tochon cited laws enacted by the very First Congress in which customs waters of "four leagues" (twelve nautical miles) were consistently recognized. DE 71, at 10 (citing Act of Aug. 4, 1790, ch. 35, s. 31, 1 Stat. 164 (1790)).

4

He also cited the Presidential Proclamation extending that zone to 24 nautical miles, and the bill that was introduced in Congress to do the same. Presidential Proclamation No. 7219, 64 Fed. Reg. 48701 (Sept. 2, 1999) (noting that extending "the contiguous zone of the United States to the [24-nm] limits permitted by international law will advance the law enforcement and public health interests of the United States."); S. 71, 118th Cong. (2023) (seeking to extend the legal definition of "customs waters" from 12 to 24 nm, consistent with the presidential proclamation extending the contiguous zone to this extent). The Government does not respond to the import of these longstanding laws, nor does it respond to the accompanying historical account of a maritime region, the contiguous zone, that essentially grew up contemporaneously with and alongside the concept of the "territorial sea" for the similar purpose of establishing a coastal nation's law enforcement authority. *See id.* at 9 (citing *U.S. Maritime Limits & Boundaries: History of Maritime Zones Under International Law*, NAT'L OCEANIC AND ATMOSPHERIC ADMIN. | DEP'T OF COMMERCE ("*NOAA on Maritime History*") (*last visited* Feb. 5, 2025), *available at* https://nauticalcharts.noaa.gov/data/us-maritime-limits-and-boundaries.html).

To the extent that much of the Government's response focuses on the exclusion of the Exclusive Economic Zone—not the contiguous zone—from the Felonies Clause's definition of the "high seas," Mr. Tochon recognizes that his argument on this point, which he maintains only for preservation purposes, is foreclosed by *Alfonso*.

*Fifth*, and finally, the Government offers no response at all to Mr. Tochon's alternative argument that even if the MDLEA is not unconstitutional as applied to

5

interdictions in the contiguous zone because of a Felonies Clause problem, the MDLEA is nonetheless unconstitutionally vague as to that application. *See* DE 71, at 12-16. As Mr. Tochon explained in his motion, due process requires that a statute not be so standardless as to invite arbitrary enforcement. *Id.* at 13 (citing *Johnson v. United States*, 576 U.S. 591, 595 (2015)). Importantly, the vagueness issue is whether "a statute provide[s] standards to govern the actions of police officers, prosecutors, juries, and judges." *Id.* at 13 (citing *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018)).

Here, the United States recognizes that Venezuela has the absolute authority to enforce its own criminal laws as to vessels in its own contiguous zone, and yet the MDLEA never explicitly authorizes United States law enforcement to take jurisdiction over vessels in that zone, nor does the MDLEA guide the standards by which United States law enforcement is to do so. By contrast, the MDLEA <u>*does*</u> provide explicit standards in directing United States law enforcement to take jurisdiction in another country's *territorial waters*, which would, without such standards, implicate the very same types of problems. *See* 46 U.S.C. § 70502(c)(1)(E) (providing that the United States may assert jurisdiction over "a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States"). This provision of the MDLEA has been ruled unconstitutional due to a Felonies Clause problem, *see United States v. Davila-Mendoza*, 972 F.3d 1264, 1267 (11th Cir. 2020), but to the extent this Court finds that application of the MDLEA in the contiguous zone *does not* have a similar Felonies Clause problem, that would not resolve the fact that the MDLEA leaves law

6

enforcement without standards on when and how they are directed to take jurisdiction over those who are essentially committing crimes in Venezuela.

*   *   *

Accordingly, for the reasons described in the defendants' joint motion to dismiss, it is respectfully submitted that there is no jurisdiction to prosecute this case, and the Court should thus dismiss the indictment.

> Respectfully Submitted,
>
> HECTOR DOPICO
> INTERIM FEDERAL PUBLIC DEFENDER
>
> BY: *s/Srilekha Jayanthi*
> Assistant Federal Public Defender
> Special Bar No. A5502728
> 150 W. Flagler Street, Suite 1700
> Miami, Florida 33130-1556
> (305) 530-7000/ (305) 536-4559, Fax
> E-Mail: srilekha_jayanthi@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **March 5, 2025**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> *s/ Srilekha Jayanthi*