UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-20295-CR-BECERRA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**BRAYAN TOCHON-LOPEZ**,
WILMER MOISES BARSELO,
JOSE FELICIANO LEMOS,
JESUS RODRIGUEZ,
LUIS ANDRES ZUNIAGA,
JORGE LUIS LOPEZ-ASTUDILLO,
EULIDES OLIVEROS-LUGO, and
STIVEN JOSE FLORES,

    Defendants.
_____/

## DEFENSE OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON THE JOINT MOTION TO DISMISS INDICTMENT

The defendants in this case—all eight of whom were Venezuelan men traveling in a vessel that had departed from Venezuela and was stopped less than 17 nautical miles from that country's coast—filed a joint motion to dismiss the indictment here charging them with drug crimes in the United States. DE 71. There are three bases. *First*, the offense here did not occur on the "high seas," as is required for jurisdiction under the U.S. Constitution's Felonies Clause, but in Venezuela's 24-nautical-mile "contiguous zone." *Second*, the MDLEA's definition of a stateless vessel is void for vagueness to the extent that it is applied to conduct occurring in another nation's contiguous zone. And *third*, for purposes of further review, Congress's Felonies

1

Clause power does not extend to felonies that bear no ties to this country, and this Court's exercise of *in personam* jurisdiction here violates the Due Process Clause.

This Court referred the defense's joint motion to Magistrate Judge Edwin G. Torres, DE 76, who issued a Report and Recommendation (R&R) recommending that the motion be denied. DE 86. For the reasons set forth below, this Court should overrule this recommendation and grant the defense's joint motion to dismiss.

***First***, to the extent the Report and Recommendation sets forth a "Background" section that omits the defense's detailed description of the interdiction and arrest at the heart of the claims in their motion, *see* DE 86, at 2-3, Mr. Tochon respectfully objects and requests that this Court incorporate those facts into its ruling. *See* DE 71, at 2-5. The Government's response did not contest any of these facts nor did it raise a factual dispute as to any issue that is material to the motion;[1] instead, the Government set forth a separate factual recitation that merely omitted some of the detail relevant to the defense's claims. *See* DE 77, at 2-3. To the extent the R&R's Background section simply tracks the Government's facts, Mr. Tochon thus objects.

---

[1] There does appear to be a dispute as to a fact that is *not* material to the claims raised in the motion to dismiss, which is the Government's assertion that Mr. Tochon had identified himself as the master of the vessel. *See* DE 86, at 3. To the extent the R&R suggests that Mr. Tochon identified himself as the master, he respectfully objects and requests that this Court either overrule that suggestion or, at a minimum, leave the issue open at this stage. *See id.* Critically, the key witness to Mr. Tochon's statements on the vessel—the Coast Guard officer who asked boarding questions in Spanish at the time of interdiction—wrote a report memorializing the conversation, and that report is clear: "None of the POB [persons on board] on board the TOI [target of interest] claimed to be the captain or person in charge of the TOI and no claim of nationality was made for the TOI. One individual by the name of Brayan Tochon was answering the questions so he was identified as the person in charge of the TOI." DE 82-1. That report squarely contradicts that Mr. Tochon identified himself as master.

***Second***, Mr. Tochon objects to the R&R's legal conclusion that the contiguous zone is part of the high seas, and he further objects that it is within Congress's Felonies Clause power to regulate conduct in another country's contiguous zone for that reason. *See* DE 86, at 9-12. There are two bases for this legal conclusion in the R&R, and Mr. Tochon objects to both.

The R&R firstly relies squarely on the text of the U.N. Convention on the Law of the Seas (UNCLOS) to find that the 24-nautical-mile contiguous zone is part of the 200-nautical-mile Exclusive Economic Zone. DE 86, at 10. The R&R then goes on to cite the Eleventh Circuit's ruling in *United States v. Alfonso*, 104 F.4th 815 (2024) for for the conclusion that the contiguous zone must not be part of the high seas because, as *Alfonso* held, the EEZ is not part of the high seas. *See* DE 86, at 10. Mr. Tochon does not disagree with the R&R in its assertion that under customary international law *today*, the contiguous zone is considered to be part of the EEZ. But the entire learning of *Alfonso* is that the EEZ is a modern creation, and that "[n]othing about the modern EEZ as defined by customary international law disturbs in any way the Founding era concept of the term 'high seas' that informed the original meaning of the Felonies Clause." *Alfonso*, 104 F.4th at 823. Indeed, the entire issue in *Alfonso* was that today's customary international law also excludes the *EEZ* from the high seas; *Alfonso* ultimately declined to rely on such "current contemporary concepts of international law" and held instead that the analysis had to rely on Founding Era history. *Id.* at 824. It is for this reason that the defense's joint motion undertook a detailed historical analysis of the contiguous zone, which revealed that the contiguous

3

zone in fact existed in the Founding Era and grew up alongside the concept of the territorial sea. *See* DE 71, at 9-11. Mr. Tochon thus objects to the R&R's reliance on the text of UNCLOS in order to find that the contiguous zone is part of the EEZ for Felonies Clause purposes, and requests that this Court instead look to the historical analysis that is set forth in the defense's motion, which makes clear that the contiguous zone *did exist* at the Founding Era, unlike the EEZ. *See* DE 71, at 6-12. Neither the R&R, nor indeed the Government's response to the defense's motion rejected this history.

The R&R secondly also relies on recent caselaw—namely *Alfonso* and *United States v. Canario-Vilomar*, 128 F.4th 1374, 1382 (11th Cir. 2025)—to find that the contiguous zone is part of the high seas, but none of this caselaw addressed the contiguous zone at all: the issue simply did not arise. *See* DE 86, at 10-12. In the Government's response to the defense's joint motion, it mentioned the case of *United States v. McPhee*, 336 F.3d 1269 (11th Cir. 2003), an MDLEA case that factually involved a vessel interdicted within 24-nautical-miles of the coastal country, and that case is also mentioned in the R&R. *See* DE 86, at 11. But it bears emphasis that the only issues in dispute in *McPhee* were factual ones: (i) whether the Government had proved that the relevant vessel was more than 12 nautical miles from a certain part of the Bahamian coastline, and (ii) whether another part of the Bahamas located even closer to the vessel did or did not constitute Bahamian coastline for purposes of determining the extent of *territorial waters*. *Id.* at 1274. To emphasize, the second question (more relevant here) was whether, factually speaking, a certain vessel was

in territorial waters, not whether the vessel was in the high seas; more specifically, whether Saint Vincent Rock was an island of the Bahamas such that if someone was 12 nm from Saint Vincent Rock, they would be in territorial waters. *Id*. And the Eleventh Circuit ruled that the district court had not clearly erred in finding that Saint Vincent Rock was not an "island," but just a "rock." *Id*. at 1275-78. So vessels 12 nautical miles from Saint Vincent Rock were not in territorial waters. *Id*. But the Court in that case did not address the legal boundary of what waters constituted the "high seas" because no party raised the issue. Mr. Tochon thus objects that this older MDLEA case, nor the newer litigation citing it, disposes of his claim that the *contiguous zone*, which existed at the Founding, is not part of the "high seas" for Felonies Clause purposes. For the reasons set forth in the defense's motion, this Court should in fact reach the opposite conclusion. *See* DE 71, at 7-12.

***Third***, Mr. Tochon also objects to the R&R's legal conclusion that there is no due process problem created by the absence of standards in the MDLEA for that statute's enforcement in another country's contiguous zone. *See* DE 86, at 15. He reiterates that this creates a problem of arbitrary enforcement, which is unresolved by the caselaw.

To be clear, the defense agrees with what the R&R acknowledges as to the contiguous zone: "Venezuela has certain control rights in its contiguous zone," and among those rights are the right to "prevent or punish infringement of 'its customs, fiscal, immigration or sanitary laws and regulations *within its territory or territorial sea*.'" *Id*. at 13, 14 (emphasis in original). The defense does not mean to go any further

5

than this in describing Venezuela's rights to enforce its domestic laws in its contiguous zone, nor the does the defense believe its position on vagueness requires any more. For instance, it is worth noting that the instant case itself involves the kind of scenario where the coastal nation *does* have law enforcement authority—the vessel at issue left Venezuelan territorial waters and was ultimately stopped approximately five nautical miles from it in the contiguous zone, with drugs allegedly on board. *See* DE 71, at 4-5. Under these circumstances, Venezuela can enforce its drug trafficking laws, just the same as if the vessel had been stopped in Venezuela's territorial waters. *See* DE 86, at 13-14.

As is well-established, U.S. ships have the right to pass through both a coastal nation's contiguous zone and that nation's territorial waters. *See* UNCLOS, art. 17 (right of innocent passage). But while the MDLEA's text *did include standards* for an interdiction by U.S. law enforcement authorities within another nation's territorial sea, the MDLEA includes *no such standards* for an interdiction within another nation's contiguous zone, although that nation may have similarly legitimate claims in a given situation to enforce its domestic laws in both regions. *See* 46 U.S.C. § 70502(c)(1)(E) (providing that the United States may assert jurisdiction over "a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States."). The Eleventh Circuit has invalidated the provision establishing these standards in the territorial sea because it has found that *any U.S. jurisdiction* in the territorial sea exceeds the scope of the Felonies Clause. *United States v. Davila Mendoza*, 972 F.3d 1264, 1267 (11th Cir. 2020). As

6

described above, the defense submits that the history of the contiguous zone compels the same result for interdictions in that maritime zone. But if this Court were to conclude otherwise, it remains instructive that Congress has believed it appropriate to impose standards for taking U.S. jurisdiction where there may be a legitimate claim of law enforcement by a coastal nation whose laws are infringed. Indeed due process *requires* that such standards be set forth by lawmakers so as to avoid the arbitrary enforcement of laws that results when the legal determination is left to law enforcement discretion. *Cf. Kolender v. Lawson*, 461 U.S. 352, 353-54 (1983). The vagueness question raised here does not relate to the *extent* of the "high seas" and problems of notice resulting therefrom: to the contrary, the defense's vagueness challenge is only reached in this case if the Court rules against the defense as to what the extent of the high seas is. Instead, the vagueness challenge here relates to the circumstances in which the U.S. can claim jurisdiction under the MDLEA, and whether the lack of standards in the contiguous zone—compared to the standards described for the territorial sea—invites arbitrary enforcement. This Court should find that it does.

*Fourth*, for purposes of preservation, Mr. Tochon also objects to the R&R insofar as it rejects the following arguments: (i) that the EEZ is in fact *not* part of the "high Seas" because the overall scope of the Felonies Clause—including the term "high Seas"—is limited by customary international law, and another nation's EEZ is not part of the high seas under customary international law; (ii) that the MDLEA exceeds Congress's Felonies Clause power because that power does not extend to drug

7

trafficking offenses bearing no connection to the United States, and (iii) that the Court's exercise of jurisdiction in this case is inconsistent with traditional notions of fair play and substantial justice, where the offense occurred in another nation's contiguous zone.

\* \* \*

It is respectfully submitted that this Court should sustain the foregoing objections, and grant the defense's joint motion to dismiss the indictment in this case.

Respectfully Submitted,

HECTOR DOPICO
INTERIM FEDERAL PUBLIC DEFENDER

BY: *s/Srilekha Jayanthi*
Assistant Federal Public Defender
Special Bar No. A5502728
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
(305) 530-7000/ (305) 536-4559, Fax
E-Mail: srilekha_jayanthi@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **April 18, 2025**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Srilekha Jayanthi*