UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-20295-CR-BECERRA

UNITED STATES OF AMERICA,
    Plaintiff,
v.

BRAYAN TOCHON-LOPEZ,
    Defendant.
_____/

## SENTENCING MEMORANDUM

Brayan Tochon-Lopez pled guilty in this case to participating in a conspiracy to possess with intent to distribute cocaine on a vessel subject to U.S. jurisdiction. DE 189 (draft PSI), at 2. As the draft PSI indicates, the safety valve criteria at subsections (1) through (4) of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a) are met in this case. ¶ 19. Mr. Tochon-Lopez has since also provided the Government with the information required at subsection (5) of those provisions, and thus anticipates that he will qualify for safety valve at sentencing. Accordingly, he submits the following information to assist in the Court's consideration of the applicable advisory guideline range, sentencing factors at 18 U.S.C. § 3553(a), and need to fashion a sentence that is sufficient but not greater than necessary to meet the goals of sentencing here.

**I.**     **Mr. Tochon's History and the Circumstances of the Offense**

Hailing from the countryside near the town of Puerto Caballo in Venezuela, Mr. Tochon grew up in abject poverty and with little in the way of fatherly care or guidance. *See* PSI, ¶ 37, 39. When Mr. Tochon was a child, his father had been a

worker in the urban setting of Rio Caribe who earned extra money by periodically buying fish in the countryside and taking it to the city for resale. *See id.* His family was in the city. *See* ¶ 39. But apparently in connection with his fish-related trips to the countryside, he ultimately set up a second family with Mr. Tochon's mother, going on to have six children with her in addition to the ten he already had in the city. ¶¶ 38-39. Mr. Tochon was the third of these children in the countryside. ¶ 38.

Mr. Tochon's mother was a cook at the local rural school, but she did not make enough money to support the children in this role. *See* ¶ 39. The father would visit periodically, but, as Mr. Tochon remembers it, contributed ever-diminishing amounts of financial support to the countryside family as Mr. Tochon and his siblings grew up. *Id.* The result was that Mr. Tochon, his mother, and his five siblings slept huddled up in a two-room efficiency that was made of aluminum and had no running water or, often, light and electricity. The other family in the city lived in the only real house the father could afford. *See* ¶ 39. Even worse, Mr. Tochon "frequently went to bed hungry" as a child. *Id.* And perhaps worst of all, Mr. Tochon remembers routinely seeing his father hit his mother, although he has never known to consider it a trauma.

By the time Mr. Tochon was seven years old, he was working to help support the family. His first job, which he held for four years, was to clean and maintain a pig sty. By the age of 11, he was forced to drop out of school entirely and "dedicate himself" to the trade of being a fisherman. ¶¶ 49, 50, 52. On the fishing boats, his first job at that age was to pass fishing hooks to the boy next to him, who would put

the bait on. The young Mr. Tochon had sea sickness though, and he remembers spending a significant part of these early trips vomiting as he tried to keep working.

In the early years after he started working, Mr. Tochon remembers his father's presence becoming increasingly scarce. The father spent more of his time, money, and energy in newer homes that he set up with younger women, and he grew increasingly reluctant to return to the home in Puerto Caballo where the growing sons objected to the father's poor treatment of their mother. *See* ¶ 37. Mr. Tochon was only about ten years old when the children persuaded their mother to entirely end her association with their father. *See* ¶¶ 37, 38. This was just before Mr. Tochon started working on the fishing boats. Thereafter, the boys fully supported their mother and sisters. But only three years in, when Mr. Tochon was 14, he lost his beloved eldest brother to a stray bullet. ¶ 38. The responsibility was then on him and his 16 year old brother. *Id.*

In addition to the substantial hardship and responsibility Mr. Tochon was forced to take on at home, he also had his own first child at the age of 17. ¶ 41. He has attempted to comport his family life in a very different manner than his father did before him. Mr. Tochon maintained a relationship with the mother of his children for nearly ten years, and continues to offer his love, financial support, and attention to their children, although they have moved away from where he lives. *See* ¶ 41. And for the past five years, he has been in a stable relationship with his current partner, with whom he has not had additional children to support. ¶ 40.

Mr. Tochon contributes his variable and often very limited income to the support of his partner, his three children, and—together with his other siblings—his

3

mother. In 2024, presented with the opportunity to commit the offense in this case—an opportunity that is sadly all-too-prevalent in his part of Venezuela—he let his financial responsibilities and his desire to provide for his family get the better of his good judgment. He accepts full responsibility for his actions and apologizes for the decisions he made, which do not reflect who he is or how he has tried to lead his life.

Pausing for a moment on the offense he is being held accountable for, it bears emphasis that Mr. Tochon and his co-defendants were observed traveling along the coastline of Venezuela, and they were apprehended only eight miles outside that country's territorial waters. *See* ¶ 6. There is no evidence that Mr. Tochon ever had any intention of coming to the United States, nor that he knew or had reason to believe that the controlled substances he agreed to transport were bound for this country. Indeed, there is no indication that the drugs actually were coming to the United States. Certainly, once Mr. Tochon finishes serving his sentence here, it is his intention to return to his home country and ensure that he never again puts himself in a position where he is unable to support the people that depend on him.

## II. Supplemental JSIN Data

The draft PSI sets forth, pursuant to 18 U.S.C. § 3553(a)(6) and the need to avoid unwarranted sentencing disparities, data compiled by the U.S. Sentencing Commission's "JSIN" database.[1] PSI, ¶ 68. This database compiles, based on a nationwide repository, "five years of sentencing data for defendants sentenced under the same primary guideline, and with the same Final Offense Level and Criminal

---

[1] *Available at* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

History category." *Id.* And the PSI presents that data for the offense level calculation in the draft PSI. Given that it is expected Mr. Tochon will have met all of the safety valve criteria before sentencing, and that this would thus reduce his Final Offense Level by two levels pursuant to U.S.S.G. § 5C1.2, the equivalent JSIN data is provided herein for the anticipated update in the advisory guideline calculation.

Per JSIN, where all of the variables are selected in the same way as in the current draft PSI (same primary guideline, drug type, and criminal history category) and the Final Offense Level is 23 instead of 25 (reflecting application of safety valve), there were a total of 981 defendants sentenced nationwide who received a term of imprisonment and did not receive any § 5K1.1 substantial assistance departure for cooperation. Among those 981, the median length of imprisonment was 36 months; in other words, half of all those sentenced received sentences of 36 months or less. And the average length of imprisonment was 33 months.

Mr. Tochon submits, consistent with the draft PSI, that this data, together with other relevant information as presented herein and at sentencing, bears on the § 3553(a) factors and the fashioning of an appropriate sentence in this case. *See* ¶ 68.

                                                Respectfully Submitted,

                                                HECTOR A. DOPICO
                                                FEDERAL PUBLIC DEFENDER

                                                BY:   *s/Srilekha Jayanthi*
                                                Assistant Federal Public Defender
                                                Special  Bar No. A5502728
                                                150 W. Flagler Street, Suite 1700
                                                Miami, Florida 33130-1556
                                                (305) 530-7000/ (305) 536-4559, Fax
                                                E-Mail:  srilekha_jayanthi@fd.org

## CERTIFICATE OF SERVICE

      I HEREBY certify that on **December 3, 2025**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      *s/ Srilekha Jayanthi*